1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 UNITED STATES OF AMERICA, | Case No. 1:24-cv-00185 JLT CDB |
| 12         Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE |
| 13 v. | PLEADINGS |
| 14 14.368 ACRES, MORE OR LESS, | (Doc. 25) |
| 15 SITUATED IN KERN COUNTY, STATE OF CALIFORNIA, AND PRECIOUS | |
| 16 EARTH INC., et al., | |
| 17         Defendants. | |

18

19       On behalf of the Federal Aviation Administration and under 40 U.S.C. § 3114, formerly

20 40 U.S.C. § 258a, the United States of America filed suit to condemn approximately 14.368 acres

21 of land located in Kern County, California.  (Doc. 25-1 at 3–4.)  Plaintiff contends that the FAA

22 has congressional authority to condemn the property for a legitimate public use.  (Doc. 25-1 at 7.)

23 Plaintiff has filed a Motion for Judgment on the Pleadings as to the legality of the condemnation

24 and as to portions of Defendant's Answer.  (*Id.* at 2, 10–15; *see also* Doc. 14.)  After considering

25 the parties' briefing, the Court GRANTS Plaintiff's Motion.

26                           **BACKGROUND**

27       Since 1959, the FAA has operated a VHF Omni-Directional Range Tactical Air

28

Navigation ("VORTAC") facility [1] located approximately three miles northwest of the Bakersfield airport in California. (Doc. 25-1 at 3.) The FAA maintains the facility to assist aircraft in the safe navigation of the National Air Space. (*Id.* at 2.) In operating the facility, the FAA leases surrounding properties to "maintain[] a 1,200-foot clear zone around the VORTAC." (*Id.* at 3 n.2.) This is because "structures and activities too close to a VORTAC can interfere with an aircraft's ability to receive the VORTAC's navigational signal, inhibiting the safe operation of aircrafts in its vicinity." (*Id.* at 3.) The 1,200-foot clear zone implicates five properties total, only one of which is at issue in this case. (*Id.* at 3 n.2.)

Defendant, Precious Earth Inc., owns a 45-acre parcel near the VORTAC, and 14.368 acres of that parcel ("Subject Property") come within the 1,200-foot zone. (*Id.* at 3.) Since 1990, the FAA has leased the Subject Property to ensure no activity interferes with the VORTAC's navigational signal. (*Id.*) The Defendant acquired the Subject Property in 2008 and maintained the lease with the FAA until on or around 2019, when the lease ended. (*Id.*) Thereafter, the FAA continued to make monthly lease payments while negotiating an extension to the lease. (*Id.*) After unsuccessful negotiations to extend the lease, Plaintiff filed this condemnation action to acquire the Subject Property. (*Id.*)

Pursuant to 40 U.S.C. § 3114, Plaintiff filed a Complaint and a Declaration of Taking on February 8, 2024. (Doc. 1; Doc. 2.) Therein, Plaintiff explained the statutory basis for the Government's authority and its public purpose for condemning the Subject Property. (Doc. 1-1, 2-1; Doc. 1-2, 2-2.) The Defendant then filed its Answer on April 4, 2024, objecting to the condemnation. (Doc. 14.) While Plaintiff initially joined Vignolo Farms, Inc. and Kern County Treasurer-Tax Collector as interested parties, (Doc. 1-7), those parties disclaimed interest in the lawsuit, (Doc. 8; Doc. 16), and have been dismissed from this case, (Doc. 23).

In the Declaration of Taking, Plaintiff included an estimated amount of just compensation,

---

[1]     A VORTAC is a facility consisting of two components, VOR and TACAN, which provides three individual services: VOR azimuth, TACAN azimuth and TACAN distance (DME) at one site. Although consisting of more than one component, incorporating more than one operating frequency, and using more than one antenna system, a VORTAC is a unified navigational aid. Both components of a VORTAC are envisioned as operating simultaneously and providing the three services at all times. Fed. Aviation Admin., *Air Navigation: Navigation Aids*, § 1-1-6, https://www.faa.gov/air_traffic/publications/atpubs/aim_html/chap1_section_1.html (last visited Sept. 17, 2025).

1   (Doc. 2-6), and deposited a sum of $140,000 into the Court registry on March 1, 2024, (Doc. 10).

2   The Court granted Defendant's request to withdraw the deposited funds on May 7, 2024.  (Doc.

3   22 at 2.)  By operation of law, the Government obtained title to the Subject Property upon filing

4   the Declaration of Taking and upon depositing the funds with the Court.  40 U.S.C. § 3114(b)(1);

5   *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 5 (1984) ("Title and right to possession

6   thereupon vest immediately in the United States.").  On June 12, 2024, Plaintiff filed a motion for

7   judgment on the pleadings, (Doc. 25); on June 26, 2024, Defendant filed an opposition, (Doc. 28);

8   and on July 8, 2024, Plaintiff filed a reply.  (Doc. 30.)

9        The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1403

10   ("Proceedings to condemn real estate for the use of the United States or its departments or

11   agencies shall be brought in the district court of the district where the land is located or . . .").

12   Plaintiff argues that it is entitled to judgment on the pleadings as to the "lawfulness of this

13   condemnation," (Doc. 25-1 at 2), and as to most of Defendant's "responses, objections, and

14   affirmative defenses" raised in its Answer.[2]  (*Id*. at 10–15.)  Substantively, Plaintiff argues that

15   the FAA has the authority to acquire property and equipment necessary for airports and air traffic

16   safety under 49 U.S.C. §§ 106(f)(2)(A)(ii); 106(n)(1)(A)(i), (iii); 40110(a)(1); and the

17   Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459.  (Doc. 25-1 at 4.)

18   As such, Plaintiff argues that the condemnation is congressionally authorized, the FAA has a

19   legitimate public purpose for condemning the Subject Property, and Defendant's defenses fail as

20   a matter of law.  (*Id.* at 16.)

21        Defendant first argues that Plaintiff's motion for judgment on the pleadings is the

22   incorrect device to dismiss Defendant's denials "[b]ecause these portions of the answer do not

23   exist apart from Plaintiff's allegation in the complaint."  (Doc. 28 at 1.)  Defendant explains that

24   instead, Plaintiff should have filed a motion to strike because it "is the appropriate device for

25   eliminating 'from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

26

---

27   [2]     Specifically, Plaintiff challenges Defendant's objections and affirmative defenses ¶ 3, 4, 5, 6, 7, 8, 10, 11, 13, (Doc. 14 at 6–7), Defendant's denials to the complaint ¶ 4, 5, 6, 7, 8, 9, (*id*. at 2–3), and Defendant's denials to

28   the declaration of taking ¶ 1, 2, 3, 4, 5, 6, (*id*. at 4–5).  Plaintiff does not, however, challenge the issue of just compensation.  (Doc. 25-1 at 15.)  Instead, Plaintiff asks this Court to "rule on the lawfulness of the condemnation now" to "ensure that the litigation remains focused on the issue of just compensation."  (*Id.*)

1    scandalous matter.'" (*Id*. at 4.)  Substantively, Defendant argues that the authority conferred in

2    49 U.S.C. § 40110(a)(1) is "conditioned on the availability of funds," and that the "taking . . . is

3    unauthorized" because Plaintiff's pleading failed to allege such funds were available.  (Doc. 28 at

4    7.)  Defendant further asserts that under the Consolidated Appropriations Act, property may only

5    be acquired "by lease or grant," not by purchase or condemnation.  (*Id*. at 7–8).  Finally,

6    Defendant argues that Plaintiff's conduct was arbitrary and capricious because Plaintiff

7    condemned the Subject Property only after its lease over the Subject Property expired in 2019.

8    (*Id*. at 11.)

9                                    **LEGAL STANDARD**

10        "Judgment on the pleadings is proper when the moving party clearly establishes on the

11    face of the pleadings that no material issue of fact remains . . . and that it is entitled to judgment

12    as a matter of law." [3]  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542,

13    1550 (9th Cir. 1989).  Such motion is "substantially identical" to a motion to dismiss under the

14    Federal Rule of Civil Procedure 12(b)(6).  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

15    2012) (internal citation omitted).  The Court must accept as true all factual allegations in the

16    pleading at issue, construe those facts in the light most favorable to the non-moving party, and

17    determine whether the non-movant is entitled to a legal remedy.  *Id.*; *Fleming v. Pickard*, 581

18    F.3d 922, 925 (9th Cir. 2009) (internal citation omitted).  In doing so, the Court must first

19    disregard conclusory statements and determine whether the remaining claims state a plausible

20    claim to relief.  *Chavez*, 683 F.3d at 1108 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

21        Additionally, the responsive pleading standard in condemnation actions requires the

22    defendant to "state all his objections and defenses to the taking of the property" and

23    "contemplates particular specifications and not generalizations."  *United States v. 14.02 Acres of*

24    *Land*, No. 1:03-cv-06019-REC-LJO, 2004 WL 7337381, at *5 (E.D. Cal. June 21, 2004) (citing

25    *U.S. ex rel. & for Use of Tennessee Valley Auth. v. 0.08 Acres of Land*, 246 F. Supp. 408, 409

---

[3]    The Court cannot go beyond the pleadings to resolve an issue in a motion for judgment on the pleadings without converting the motion into one for summary judgment.  *Hal Roach Studios, Inc.*, 896 F.2d at 1550. However, the Court may still properly consider exhibits attached to the pleadings, documents referred to in the pleadings, and judicially noticeable facts. *See Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

1   (E.D. Tenn. 1965)); Fed. R. Civ. P. 71.1(e)(2).  Accordingly, to prevail on a motion for judgment

2   on the pleadings, defendant must plead his defense with sufficient detail.  *Id.*; *see also Gov't of*

3   *Virgin Islands v. 19.623 Acres of Land*, 563 F.2d 566, 569 (3rd Cir. 1976) (explaining that Rule

4   71.1 contemplates a two-step procedure, where during the first stage "all defenses and objections

5   must be carefully preserved").

6          A plaintiff may move for judgment on the pleadings as to affirmative defenses and denials

7   raised in the answer.  *14.02 Acres of Land*, 2004 WL 7337381, at *5, *aff'd*, 547 F.3d 943 (9th Cir.

8   2008) (granting plaintiff's motion for judgment on the pleadings as to a series of affirmative

9   defenses raised by the defendant in a condemnation action); *United States v. 14.02 Acres of Land*,

10  547 F.3d 943, 956 n.4 (9th Cir. 2008) (explaining that the district court did not err in granting

11  plaintiff's judgment on the pleadings as to defendant's "*affirmative defenses* and . . . his *denial* of

12  the allegations contained in the complaint" because both claims pertained to "*the government's*

13  *right to take* in this action").  However, a plaintiff will not prevail "when the answer raises issues

14  of fact that, if proved, would defeat recovery."  *Gen. Conf. Corp. of Seventh-Day Adventists v.*

15  *Seventh-Day Adventist Cong. Church*, 887 F.2d 228, 230 (9th Cir. 1989) (finding that judgment

16  on the pleadings as to defendant's answer was improper because it sufficiently raised "question[s]

17  of material fact").

18         When granting a motion for judgment on the pleadings, a court should grant leave to

19  amend if the complaint can be cured by additional factual allegations.  *Somers v. Apple, Inc.*, 729

20  F.3d 953, 960 (9th Cir. 2013).  However, "dismissal without leave to amend is proper if it is clear

21  that the complaint could not be saved by amendment."  *Id.* (internal citation omitted).

**ANALYSIS**

## I.    Condemnation Proceedings and Scope of Judicial Review

24         Eminent domain is the power of the Government to take private property for public use

25  without the owner's consent.  *United States v. 0.95 Acres of Land*, 994 F.2d 696, 698 (9th Cir.

26  1993).  The power of eminent domain is limited by the just compensation clause of the Fifth

27  Amendment.  *Id.*  "A federal court has jurisdiction to review only one aspect of condemnation

28  actions: is the purpose for which the property was taken a Congressionally authorized public

use?" *Id.* at 699; *see also 14.02 Acres of Land*, 2004 WL 7337381, at *5. As the Ninth Circuit

explained in *United States v. 80.5 Acres*, 448 F.2d 980, 983 (9th Cir. 1971):

> It is uncontroverted that the courts are not vested with the authority judicially to review the power of Congress to authorize acquisition of land. Once an administrative agency designated by Congress has been delegated authority to take lands for a public use, the courts have no jurisdiction to review action of that administrative agency in its determination as to the parcels of land that are or are not necessary to the project. The necessity of taking or appropriating private property for public use is legislative in nature and one over which the courts lack jurisdiction.

Defendant cites *United States v. Reynolds*, 397 U.S. 14, 20 (1970), to argue that the

Court's role in a condemnation action is much broader. (Doc. 28 at 6.) In *Reynolds*, the Supreme

Court explained that although "there is no constitutional right to a jury in eminent domain

proceedings," a party may nonetheless request a jury trial on the sole issue of just compensation

under Rule 71.1(h)(1)(B), formerly Rule 71A(h).[4] 397 U.S. at 18–19. If a jury is afforded, the

judge will decide all issues, legal and factual, except for the single issue of just compensation.[5]

*Id.* at 20.

Reynolds*, and cases cited therein, explain that the district judge's role in condemnation

proceedings is broader than in a conventional jury trial. *Id.*; *see also Scott Lumber Co. v. United

States*, 390 F.2d 388, 392 (9th Cir. 1968) (explaining that whether the government acted in bad

faith or in a manner which was arbitrary and capricious is an issue for the district judge to

decide); *United States v. 91.69 Acres of Land*, 334 F.2d 229, 231–32 (4th Cir. 1964) (explaining

that in condemnation proceedings, judicial review is limited to whether private property was

taken for public use, and theoretically could also include review of arbitrary, capricious, or

corrupt conduct). However, *Reynolds* does not negate the general rule that, in condemnation

---

[4]    "Rule 71A(h) provides that . . . any party to a federal eminent domain proceeding may have a trial by jury of the issue of just compensation, unless the court in its discretion orders that that issue shall be determined by a commission of three persons appointed by it." *Reynolds*, 397 U.S. at 19 (internal quotations omitted).

[5]    The precise issue in *Reynolds* was whether the jury or judge would decide the "scope-of-the-project" issue—namely, whether the condemned property is "probably within the scope of the project from the time the Government was committed to it" for purposes of determining an enhancement in compensation. 397 U.S. at 17, 19–21. The Supreme Court held that this presented a legal issue, which was for the Judge to decide. *Id.* at 20 n. 14 ("[T]he judge merely decided a legal question which limited the factors necessary to the determination of 'just compensation.'") (internal citations omitted).

1  proceedings, courts are limited in their judicial review. *See Berman v. Parker*, 348 U.S. 26, 35–

2  36 (1954) ("Once the question of the public purpose has been decided, the amount and character

3  of land to be taken for the project and the need for a particular tract to complete the integrated

4  plan rests in the discretion of the legislative branch."); *Shoemaker v. U.S.*, 147 U.S. 282, 298

5  (1893).

6      In sum, "cases in which the courts have reviewed condemnation decisions generally

7  employ one of two standards of review." *U.S., Dep't. of Interior v. 16.03 Acres of Land*, 26 F.3d

8  349, 355 (2d Cir. 1994). The first standard, described as the ultra vires standard, "requires the

9  reviewing court to . . . determine[e] whether the officials effecting the taking acted outside the

10  scope of their taking authority." *Id* (internal citations omitted). The second standard uses the

11  "arbitrary, capricious, or bad faith standard of review to assess the validity of a contested taking."

12  *Id* (internal citations and quotations omitted). With this framework in mind, the Court turns to the

13  merits of the motion.

14  **II.    Merits of the Motion for Judgment on the Pleadings**

15      As a threshold matter, Defendant is incorrect that Plaintiff's challenges may only be raised

16  in a motion to strike and are thus time-barred because the deadline to file a Rule 12(f) motion has

17  passed. (Doc. 28 at 4.) Defendant argues that the Plaintiff "should have moved to strike" denials

18  to the complaint numbers four through nine and affirmative defense number eleven. (Doc. 28 at

19  4–6.) Defendant offers no support for such proposition.[6] To the contrary, in condemnation

20

---

21  [6]    None of the cases cited by the Defendant *prohibit* a plaintiff from filing a motion for judgment on the
pleadings to challenge the sufficiency of an affirmative defense or denial. (Doc. 28 at 3–6.) *Cf. United States v.*

22  *1.647 Acres*, No. 3:15-cv-01859-L-DHB, 2017 WL 1080665, at *4 (S.D. Cal. Mar. 22, 2017) (preferring to grant the
government's motion to strike certain defenses over judgment on the pleadings because partial judgments are
disfavored); *Jones v. Nutiva, Inc.*, No. 16-cv-00711-HSG, 2016 WL 5210935, at *12 (N.D. Cal. Sept. 22, 2016)

23  (denying plaintiff's untimely motion to strike certain affirmative defenses and, in its discretion, choosing not to treat
it as a motion for judgment on the pleadings); *Arthur v. Constellation Brands, Inc.*, No. 16-cv-04680-RS, 2016 WL

24  6248905, at *2–4 (N.D. Cal. Oct. 26, 2016) (granting plaintiff's motion to strike certain affirmative defenses because
they failed to satisfy the "fair notice" pleading standard and denying plaintiff's motion to strike certain defenses for

25  failure to show prejudice); *Perez v. Nuzon Corp.*, SACV 16-00363-CJC, 2016 WL 11002544, at *2–3 (C.D. Cal.
June 6, 2016) (explaining that striking an affirmative defense—which was actually a denial but was mischaracterized

26  as an affirmative defense—would not streamline issues for trial, nor would plaintiff be prejudiced by the Court's
refusal to grant such motion). Likewise, Plaintiff need not show prejudice because the motion before the Court is

27  brought under Rule 12(c) not Rule 12(f). *Cf. 14.02 Acres of Land*, 2004 WL 7337381, at *3 ("Courts are generally
reluctant to strike a defense in the absence of a showing of prejudice to the moving party."). And even if partial

28  judgments are disfavored under Rule 12(c), so too are motions to strike. *Id* ("Motions to strike a defense as
insufficient are not favored by the courts because of their dilatory character.").

1   actions, district courts grant judgment on the pleadings for the very same defenses and denials

2   made in the present case.  For instance, in *14.02 Acres of Land*, the government moved for

3   judgment on Defendant's affirmative defenses, which challenged the government's taking as

4   "unconstitutional" and claimed a denial of "due process," a lack of "authority for the taking," an

5   illegitimate "public use or purpose," and "arbitrary and capricious action."  2004 WL 7337381, at

6   *5–12, 15–17.  There, the court granted judgment on the pleadings as to all affirmative defenses,

7   dismissing them as a matter of law or for failure to raise an issue of fact.  *Id*.  Similarly, here,

8   Defendant challenges Plaintiff's statutory authority and public purpose, and argues that the taking

9   is unconstitutional, arbitrary, and denies due process of law.  (Doc. 14 at 2, 4, 6–7.)  Accordingly,

10  judgment on the pleadings is an appropriate procedural mechanism.

11      Defendant further argues that "judgment on the pleadings is inappropriate as to . . . denials

12  and 'negative defenses' that relate to elements of the claim."  (Doc. 28 at 1.)  However, denials

13  four and five to the complaint—which object to the government's statutory authority and public

14  purpose—raise similar constitutional challenges as many of the affirmative defenses. [7]  In any

15  event, whether presented as a denial or defense, courts regularly dispose of such arguments via

16  judgment on the pleadings.  *United States v. An Easement & Right-of-Way Over 3.28 Acres of*

17  *Land*, No. 1:15-cv-00019-GHD-DAS, 2017 WL 916415 at *2 (N.D. Miss. Mar. 7, 2017)

18  (granting the government's Rule 12(c) motion in a condemnation action because the defenses,

19  which allege lack of authority, insufficient public use, and due process violations, fail as a matter

20  of law).

21      As the Ninth Circuit explained, because the "government moved for . . . judgment on the

22  pleadings *on the issue of the government's right to take* in this action," the Court may grant

23  judgment as to both "*affirmative defenses*" and "*denial[s]* of allegations contained in the

24  complaint."  *14.02 Acres of Land*, 547 F.3d at 956 n.4.  This is true even for denials six through

25  eight which object to the "legal description of the land," the "plat map," and the "depiction of the

26  estate" that the government seeks to take.  (Doc. 14 at 3); *see An Easement & Right-of-Way*, 2017

---

27

28      [7]    Denials four and five to the complaint essentially raise the same challenges as affirmative defenses three
through six regarding the constitutionality of the taking, due process violations, conditions requisite to condemnation,
and scope of condemnation powers.  (Doc. 14 at 2, 4, 6.)

WL 916415 at *4–5 (granting judgment on the pleadings as to defendant's objections, which assert that the complaint failed to adequately describe the property, title, or interest involved in the taking).  This is also true for affirmative defense eleven which reserves a right to attorney's fees under the Equal Access to Justice Act.  (Doc. 28 at 6); *Wash. Metro. Area. Transit Auth. v. 6,627 Square Feet of Land*, 2022 WL 2438549, at *5–9 (D.D.C. July 5, 2022) ("*WMTA*") (granting judgment on the pleadings as to defendant's argument that it is entitled to attorney fees and costs under the EAJA because this is "not a 'defense or objection' to the taking itself").  Accordingly, the government may move for judgment on the pleadings as to the entirety of Defendant's answer.

### A.  First and Second Affirmative Defenses, Denials One and Ten to the Complaint, Denial Seven to the Declaration of Taking

The first and second affirmative defenses "assert an interest in the property" and "object[] to the inclusion of Vignolo Farms, Inc., or the Kern County Treasurer Tax Collector, as defendants in this matter."  (Doc. 14 at 6.)  Denials one and ten to the complaint, (*id*. at 1, 3), and denial seven to the declaration of taking, (*id*. at 5) make similar allegations.  These issues are uncontested.  Plaintiff does not challenge Defendant's claim of title but rather seeks to "narrow the proceedings" to determining "the amount of just compensation the United States owes the defendant."  (Doc. 25-1 at 16.)  Further, both Vignolo Farms, Inc. and Kern County Treasurer Tax Collector have filed Disclaimers of Interest and have been dismissed from this case.  (Doc. 8; Doc. 16; Doc. 23.)  These issues are therefore uncontested.

### B.  Third, Fourth, Fifth, and Sixth Affirmative Defense, Denials Four and Five to the Complaint, Denials One and Two to the Declaration of Taking

The third, fourth, fifth, and sixth affirmative defenses alleged in the Answer, (Doc. 14 at 6), are as follows:

> 3. As a separate and third affirmative defense to the Complaint and the purported cause of action contained therein, Plaintiff's proposed taking is unconstitutional.

> 4. As a separate and fourth affirmative defense to the Complaint and the purported cause of action contained therein, Plaintiff's proposed taking would deny Owner due process of law.

5. As a separate and fifth affirmative defense to the Complaint and the purported cause of action contained therein, Plaintiff has failed to meet all conditions precedent to the filing of the condemnation lawsuit.

6. As a separate and sixth affirmative defense to the Complaint and the purported cause of action contained therein, Plaintiff has exceeded its condemnation powers.

Consistent with these affirmative defenses, Defendant included certain denials, in response to Plaintiff's Complaint, which also challenge the Government's authority to condemn the property. (Doc. 14 at 2.)

4. In response to Paragraph 3 of Plaintiff's Complaint . . . Owner denies the allegations of Paragraph 3 in their entirety, including any purported allegations of fact through reference to attached documents, and that Schedule A is an admissible, genuine, authentic, complete, true and correct recital of the authority upon which the United States seeks to condemn the land at issue.

5. In response to Paragraph 4 of the Complaint . . . Owner denies the allegations of Paragraph 4 in their entirety, including any purported allegations of fact through reference to attached documents, and that Schedule B is an admissible, genuine, authentic, complete, true and correct recital of the public purpose for which the United States seeks to condemn the land at issue.

Defendant included virtually the same denials in response to Plaintiff's Declaration of Taking. (Doc. 14 at 4.)

1. In response to Paragraph 1 of the Plaintiff's Declaration of Taking . . . Owner denies the allegations of Paragraph 1 in their entirety, including any purported allegations of fact through reference to attached documents, and that Schedule A is an admissible, genuine, authentic, complete, true and correct recital of the authority upon which the United States seeks to condemn the land at issue.

2. In response to Paragraph 2 of the Plaintiff's Declaration of Taking . . . Owner denies the allegations of Paragraph 2 in their entirety, including any purported allegations of fact through reference to attached documents, and that Schedule B is an admissible, genuine, authentic, complete, true and correct recital of the public purpose for which the United States seeks to condemn the land at issue.

Each of these defenses and denials challenge the Government's statutory authority, the legitimacy of the public purpose, and Plaintiff's compliance with requisite "conditions" for the taking. Accordingly, the Court addresses these claims together. In addressing these claims, the Court "must assess both prongs of the 'public purpose' inquiry." *14.02 Acres of Land*, 547 F.3d

at 949 (applying this framework in a condemnation action brought by the Secretary of Energy and the Administrator of the Western Area Power Administration ("WAPA")). First, the Secretary of Transportation and the Administrator of the FAA must have statutory authorization to condemn the Subject Property. *Id.* Second, the need to maintain the VORTAC's navigational signal must constitute a "public use" under the Takings Clause of the Fifth Amendment. *Id.*; U.S. CONST. amend. V.

### 1. Authority for the Taking

Defendant challenges the "authority upon which the United States seeks to condemn the land at issue." (Doc. 14 at 2, 4.) Defendant further asserts that Plaintiff "exceeded its condemnation powers," (*Id.* at 6), and that the "taking is unconstitutional." (*Id.*) Applying the ultra vires standard of review to these claims, the Court is "limited to examining the four corners of the statute that gives the officials the power to act and determining whether the officials have complied with the statute's language." *14.02 Acres of Land*, 2004 WL 7337381, at *7 (applying the ultra vires standard of review enumerated by the Second Circuit in *U.S., Dep't. of Interior*, 26 F.3d at 355).

The Court has reviewed all the relevant statutes at issue and concludes that the FAA is fully authorized by federal law to condemn the Subject Property for the safe operation and maintenance of its VORTAC facility. Congress established the Department of Transportation ("DOT") in 1966 to "ensure the coordinated and effective administration of the transportation programs of the United States Government." 49 U.S.C. § 101(b)(1). The DOT Act established the FAA within DOT and conferred authority on the Secretary of Transportation and the FAA Administrator to carry out the functions of the FAA. Department of Transportation Act, 1966, Pub. L. No. 89-670, 80 Stat. 931, 931–32, § 3(e)(1) (Oct. 15, 1966). 49 U.S.C. §§ 106(f)(1), (f)(2)(A)(ii), and 106(f)(3)(A)(i) provides:

> (1) **Authority of the Secretary** – Except as provided in paragraphs (2) and (3), the Secretary of Transportation shall carry out the duties and powers, and controls the personnel and activities, of the Administration.
> (2) **Authority of the Administrator** – The Administrator (A) is the final authority for carrying out all functions, powers, and duties of the Administration relating to – (ii) the acquisition,

> establishment, improvement, operation, maintenance, security (including cybersecurity), and disposal of property, facilities, services, and equipment of the Administration, including all elements of the air traffic control system owned by the Administration.
>
> (3) **Duties and powers of the Administrator** – (A) In general – The Administrator shall carry out – (i) the duties and powers of the Secretary under this subsection related to aviation safety (except duties and powers related to transportation, packaging, marking, or description of hazardous material)

49 U.S.C. § 106(n)(1)(A)(i), (iii) authorizes the Administrator to condemn property he or she deems necessary:

> (n) **Acquisition** – (1) In general – the Administrator is authorized – (A) to acquire (by purchase, lease, condemnation, or otherwise), construct, improve, repair, operate, and maintain – (i) air traffic control facilities and equipment; (iii) such other real and personal property (including office space and patents), or any interest therein, within and outside the continental United States as the Administrator considers necessary[.]

49 U.S.C. § 40110(a)(1) sheds light on the scope of the Administrator's condemnation power:

> (a) **General** – In carrying out this part, the Administrator of the Federal Aviation Administration – (1) to the extent that amounts are available for obligation, may acquire services or, by condemnation or otherwise, an interest in property, including an interest in airspace immediately adjacent to and needed for airports and other air navigation facilities owned by the United States Government and operated by the Administrator[.]

The Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459, 5103–04 (Dec. 29, 2022), appropriates approximately $2.95 billion dollars to the FAA for the operation of its facilities and equipment:

**FACILITIES AND EQUIPMENT**
(AIRPORT AND AIRWAY TRUST FUND)

> For necessary expenses, not otherwise provided for, for acquisition, establishment, technical support services, improvement by contract or purchase, and hire of national airspace systems and experimental facilities and equipment, as authorized under part A of subtitle VII of title 49, United States Code, including initial acquisition of necessary sites by lease or grant; engineering and service testing, including construction of test facilities and acquisition of necessary sites by lease or grant; construction and furnishing of quarters and related accommodations for officers and employees of the Federal Aviation Administration stationed at remote localities where such accommodations are not available; and the purchase, lease, or transfer of aircraft from funds made available under this heading,

including aircraft for aviation regulation and certification; to be derived from the Airport and Airway Trust Fund, $2,945,000,000, of which $570,000,000 is for personnel and related expenses and shall remain available until September 30, 2024, $2,221,200,000 shall remain available until September 30, 2025, and $153,800,000 is for terminal facilities and shall remain available until September 30, 2027: Provided, That there may be credited to this appropriation funds received from States, counties, municipalities, other public authorities, and private sources, for expenses incurred in the establishment, improvement, and modernization of national airspace.

The Court concludes that the FAA Administrator has the statutory authority to condemn the Subject Property.  The Administrator has "final authority" for functions relating to the "acquisition" of property and facilities of the Administration, including matters of "air traffic control" and "aviation safety."  49 U.S.C. § 106(f)(2)(A)(ii), (3)(A)(i).  The express words of the statute give the Administrator power to "acquire," "purchase," or "condemn" air traffic control facilities, equipment, and real property the Administrator deems "necessary."  *Id*. at § 106(n)(1)(A)(i), (iii).  The use of the word *necessary* indicates that the FAA has discretion to condemn private property for matters related to aviation safety.  *Id*.; *16.03 Acres of Land*, 26 F.3d at 355 ("Such authority may be broad or narrow depending upon the language employed in the empowering legislation.").

There can be no dispute that this statutory language encompasses the condemnation of the Subject Property.  By virtue of its vicinity to the Bakersfield VORTAC facility [8], the property inhibits the safe operation of the VORTAC's navigational signal and thereby poses a risk to aircrafts operating in that general area.  (Doc. 1-4; Doc. 25-1 at 3.)  In fact, the statutory framework contemplates this very situation in authorizing "condemnation" of "an interest in property, including an interest in airspace immediately adjacent to and needed for airports and other air navigation facilities owned by the United States Government."  49 U.S.C. § 40110(a)(1).

---

[8]    Plaintiff's briefing indicates that the VORTAC is located at 34550 Burbank St., Bakersfield, CA 93308, approximately six miles northwest of the Meadows Field Airport in Bakersfield, California.  (Doc. 25-1 at 3 n.1.)  Plaintiff's briefing also indicates that 14.368 acres of Defendant's property come within 1,200 feet of the VORTAC.  (*Id*. at 3.)  Such facts are represented in Plat D1 and Plat D2, attached as Schedule D to the Complaint.  (Doc. 1-4.)  The plat illustrates the location of the "EHF VOR SITE," the 1,200-foot radius around the site labeled the "EHF VOR CLEAR ZONE," the 14.368-acre tract that comes within that radius, and adjacent streets "Burbank Avenue" and "Amos Street," which directly correspond to the address listed in Plaintiff's briefing.  (*Id*.)  Thus, the Court properly considers these facts for purposes of judgment on the pleadings.

1    Hence, the FAA and its Administrator were authorized to condemn the Subject Property because

2    it is "adjacent to and needed for" the VORTAC facility's safe operation. *Id.*

3        Defendant argues that Plaintiff's condemnation authority under 49 U.S.C. § 40110(a)(1) is

4    conditioned on the availability of funds because the statute expressly states, "to the extent that

5    amounts are available for obligation." Even if true, this argument fails because Congress has

6    already appropriated approximately $2.95 billion dollars for FAA's facilities and equipment.

7    Pub. L. No. 117-328, 136 Stat. 4459, 5103–04. Contrary to Defendant's position, this case is

8    unlike *Benenson v. U.S.*, 548 F.2d 939, 944–47 (Ct. Cl. 1977), where the Claims Court found that

9    the government could not condemn the subject property until Congress had first appropriated

10    funds.

11        Instead, this case is more akin to *14.02 Acres of Land*, 2004 WL 7337381, at *7. There,

12    the court found that the Secretary of Energy and WAPA had authority to condemn property, in

13    part, because Congress had already specifically appropriated funds for the projects at issue. *Id.* at

14    9–10 ("Congress specifically authorized WAPA to participate in the COTP/Path 15 Project

15    through the Energy and Water Development Appropriations Act . . . Congress allocated

16    appropriations for WAPA's construction, operation and maintenance functions for the 1985 fiscal

17    year."). Similarly, the Consolidated Appropriations Act specifically allocates funds for FAA's

18    facilities and equipment, which would include the VORTAC facility. Pub. L. No. 117-328, 136

19    Stat. 4459, 5103–04 (explaining that $2,221,200,000 dollars will remain available until

20    September 30, 2025). Furthermore, as Plaintiff indicates, Defendant "has already withdrawn

21    $140,000 of the FAA's appropriation that it now claims never existed and may no longer be

22    available." (Doc. 30 at 6; *see also* Doc. 22 at 2.)

23        Defendant argues also that under the Consolidated Appropriations Act, "it is apparent that

24    the only funding available for acquisitions of air navigation facilities includes initial acquisition

25    of necessary sites . . . 'by lease or grant' and not by purchase or condemnation." (Doc. 28 at 8).

26    However, Defendant quotes the Appropriations Act out of context and in parts. *City & Cnty. of*

27    *San Francisco, California v. Env't Prot. Agency*, 604 U.S. 334, 350 (2025) ("It is a fundamental

28    canon of statutory construction that the words of a statute must be read in their context and with a

1   view to their place in the overall statutory scheme.") (internal citations and quotations omitted).

2           Looking at the Appropriations Act as a whole, Defendant is incorrect. The Act explicitly

3   allocates funds "for necessary expenses" and "for acquisition . . . by contract or purchase" and is

4   not limited to acquisition by lease or grant.  Pub. L. No. 117-328, 136 Stat. 4459, 5103–04.  The

5   precise language quoted by Defendant more fully states, "including initial acquisition of

6   necessary sites by lease or grant."  *Id*.  A plain reading of the word, "including" indicates a non-

7   exhaustive list of items where the FAA may choose to spend its funds.  However, at no point does

8   the word "including" indicate a *limitation* on the use of those funds.  *Id*.  Further, the Act clearly

9   references Title 49 of the United States Code.  *Id* ("as authorized under part A of subtitle VII of

10  title 49").  Section 40110(a)(1) falls squarely under Title 49, Subtitle VII, Part A, which clearly

11  states that the FAA "may acquire an interest in property by condemnation."  Thus, Defendant's

12  arguments are unwarranted.

13                  **2.  Public Use**

14          Defendant challenges the "public purpose for which the United States seeks to condemn

15  the land at issue."  (Doc. 14 at 2, 4; Doc. 1-2.)  The government's purported purpose will pass

16  constitutional muster if "the exercise of the eminent domain power" is "rationally related to a

17  conceivable public purpose."  *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984).  The

18  Court "will not substitute its judgment for a legislature's judgment as to what constitutes a public

19  use unless the use [is] palpably without reasonable foundation."  *Id* (internal citations and

20  quotations omitted).

21          Plaintiff's asserted purpose, taking the land "for the operation of equipment necessary to

22  support the safe navigation and operation of military, commercial, and private aviation activities

23  in the National Air Space," is proper.  (Doc. 1-2; Doc. 2-2.)  Plaintiff's purpose is rationally

24  related to aviation safety and the secure operation of air traffic control, which directly reflects

25  FAA's statutory role.  49 U.S.C. § 106(f)(3)(A)(i) ("Administrator shall carry out the duties and

26  powers . . .  related to aviation safety."); *Id*. at § 106(f)(2)(A)(ii) ("duties of the Administration

27  relating to . . . operation, maintenance, security . . . including all elements of the air traffic control

28  system").  Similarly, in *80.5 Acres of Land*, the Ninth Circuit found that the Department of

                                            15

1   Interior's purpose to use the condemned land "for maintenance of minimum basic facilities for

2   access to and for public health and safety and the protection of public property" was proper

3   because it recited the statutory parameters of the Trinity River Act. 448 F.2d at 984. Thus,

4   Plaintiff's asserted purpose is proper as it falls squarely within the DOT Act.

5         It is reasonable for the FAA to condemn the Subject Property because it is within the

6   VORTAC's "clear zone" and may interfere with an aircraft's ability to receive the VORTAC's

7   navigational signal. (Doc. 1-4 at 1; Doc. 25-1 at 3); *see also United States v. 69.1 Acres of Land*,

8   942 F.2d 290, 291–92 (4th Cir. 1991) (reviewing the district court's award of just compensation

9   in a case where the United States similarly condemned property located in Sand Mountain, South

10   Carolina, for the operation of a VORTAC station). It is rational to believe that a failure to

11   condemn the Subject Property would impede the "operation of equipment necessary to support

12   the safe navigation . . . of . . . aviation activities in the National Air Space," as stated in the

13   Complaint. (Doc. 1-2; Doc. 2-2.) Whether the Subject Property actually interferes with the

14   navigation signal is not for this Court to "second guess." *80.5 Acres of Land*, 448 F.2d at 984 ("A

15   contrary conclusion would . . . convert . . . a legislative determination into a judicial question");

16   *see also 16.03 Acres of Land*, 26 F.3d at 360 ("[I]t does not follow that a reviewing court may

17   seize upon it as the actual position of the Secretary with respect to a challenged condemnation

18   and disregard the Secretary's position as it appears in his complaint in condemnation.").

19   Accordingly, the public purpose at issue is constitutional.

20         **3.  Procedure for the Taking**

21         Defendant argues that Plaintiff "failed to meet all conditions precedent to the filing of the

22   condemnation lawsuit" and that the "taking would deny Owner due process of law." (Doc. 14 at

23   6.) However, Plaintiff filed a Complaint and a Declaration of Taking which fully comply with

24   Rule 71.1(c) and 40 U.S.C. § 3114(a). Rule 71.1(c)(2) requires the complaint to contain "a short

25   and plain statement" of the authority for the taking, the uses for which the property is taken, a

26   description sufficient to identify the property, the interests to be acquired, and a designation of

27   each defendant who has been joined as an owner. Similarly, 40 U.S.C. § 3114(a) requires the

28   Declaration of Taking to contain a statement of authority and public use for which the land is

1   taken, a description of the land, a statement of the estate or interest in the land, a plan showing the

2   land, and a statement of the estimated amount of just compensation for the land.

3         Plaintiff filed both a Complaint and a Declaration with attached Schedules A through G

4   showing the statutory authority, the public purpose, the land's legal description, the land's plat or

5   map, a description of the estate, a description of interested parties, and an estimate for just

6   compensation.  (Doc. 1-1–1-7; Doc. 2-1–2-7.)  Plaintiff complied with Rule 71.1(j) when the

7   United States "deposit[ed] with the court any money required by law as a condition to the

8   exercise of eminent domain."  Fed. R. Civ. P. 71.1(j).  On March 1, 2024, Plaintiff deposited the

9   estimated amount of just compensation with the Court.  (Doc. 10 at 2.)  Thus, Plaintiff did not fail

10  to meet the requisite "conditions" for condemnation as Defendant claims.  (Doc. 14 at 6.)

11        Nor did the taking deny the Defendant "due process of law."  (*Id.*)  As explained above,

12  the government's public purpose is constitutional, the taking was congressionally authorized, and

13  the government complied with requisite procedures to condemn the property.  *See also Travis v.*

14  *United States*, 287 F.2d 916, 919 (Ct. Cl. 1961) ("It has also been held that the [Declaration of

15  Taking] Act does not work an unconstitutional deprivation of property without due process since

16  it provides for the payment of just compensation.").  To the extent that Defendant argues it is

17  entitled to a hearing on the government's necessity determination when selecting the Subject

18  Property for condemnation, Defendant is incorrect.  *Bragg v. Weaver*, 251 U.S. 57, 58 (1919)

19  ("Where the intended use is public, the necessity and expediency of the taking may be determined

20  by such agency and in such mode as the state may designate. They are legislative questions, no

21  matter who may be charged with their decision, and a hearing thereon is not essential to due

22  process in the sense of the Fourteenth Amendment.")

23        **4.  Standard of Decision**

24        While generally, on a motion for judgment on the pleadings the Court would construe the

25  facts in the light most favorable to the non-movant, the allegations Defendant makes regarding

26  the government's lack of authority and erroneous public use are not allegations of fact.  *See 14.02*

27  *Acres of Land*, 547 F.3d at 955.  Instead, "[t]hey are either non reviewable discretionary

28  determinations, as in the case of the 'necessity' determination, or pure questions of law as in the

1  case of the 'public use' inquiry." *Id*.  Because the FAA has statutory authority to condemn

2  property based on what it deems *necessary* for *aviation safety*, judgment on the pleadings as the

3  legality of the condemnation is proper.  The FAA made a discretionary assessment when it

4  deemed that the Subject Property interfered with its air traffic control facility and the Court need

5  not defer to Defendant in this instance.  *Id*.

6      Judgment as to these defenses is proper because these objections do not involve

7  allegations of fact, but rather "pure questions of law" and "discretionary determinations." *Id*.

8  Upon review of relevant authority, Plaintiff prevails as a matter of law.  Hence, this is not a

9  situation where the "answer raises issues of fact that, if proved, would defeat recovery." *Cf. Gen.*

10 *Conf. Corp. of Seventh-Day Adventists*, 887 F.2d at 230–31 (holding that judgment on the

11 pleadings was improper because defendant's objections are "question[s] of fact" that if proved,

12 would bar plaintiff's recovery in a trademark infringement action—namely, whether there is a

13 likelihood of confusion from the use of the mark and whether the mark is generic).

14      Accordingly, Plaintiff's judgment on the pleadings as to Defendant's affirmative defenses

15 three, four, five, and six; denials four and five to the complaint; and denials one and two to the

16 declaration of taking is **GRANTED**.

17              **C.  Seventh Affirmative Defense**

18      The seventh affirmative defense states that the Plaintiff "failed to properly negotiate with

19 owner as required by law."  (Doc. 14 at 6.)  This objection fails as a matter of law.  Neither the

20 Declaration of Taking Act, nor the DOT Act require the FAA to engage in negotiations prior to

21 condemnation.  *See United States Upon Rel. of Tennessee Valley Auth. v. An Easement & Right-*

22 *of-Way Over 0.24 Acre of Land,* 2019 WL 11 3849163, at *3 (N.D. Miss. Aug. 15, 2019) (finding

23 that neither the TVA Act, 16 U.S.C. § 831c(i), nor the Declaration of Taking Act, 40 U.S.C.

24 § 3114, required the Tennessee Valley Authority to enter negotiations prior to condemning the

25 subject property); *An Easement & Right-of-Way*, 2017 WL 916415 at *3 ("TVA was not required

26 to engage in good-faith negotiations or produce an offer of compensation prior to instituting the

27 action.").  Section 3114 of the Declaration of Taking Act does not require negotiation efforts prior

28 to condemnation.  40 U.S.C. § 3114(a) provides:

18

> [t]he declaration of taking shall contain . . . (1) a statement of the authority under which . . . the land is taken, (2) a description of the land taken that is sufficient to identify the land, (3) a statement of the estate or interest in the land taken for public use, (4) a plan showing the land taken, and (5) a statement on the amount of money estimated by the acquiring authority to be just compensation for the land taken.

Absent from this list is any requirement that the government submit a statement detailing its negotiation efforts. This "justif[ies] the inference that items not mentioned were excluded by deliberate choice." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Further, neither of the remaining subsections require the government to engage in negotiations prior to condemnation. 40 U.S.C. § 3114(b)–(e). Likewise, the DOT Act does not require the FAA to engage in negotiations as a prerequisite to condemnation. 49 U.S.C. § 106(n)(1). Instead, it simply authorizes the FAA Administrator "to acquire (by purchase, lease, condemnation, or otherwise) . . . air traffic control facilities and equipment . . . and such other real or personal property . . . the Administrator considers necessary." *Id*. The Defendant has cited no authority to the contrary. Accordingly, judgment on the pleadings as to the seventh affirmative defense is **GRANTED.**

### D. Eighth and Tenth Affirmative Defense, and Portions of Denial Nine to the Complaint and Denial Six to the Declaration of Taking

The Eight and Tenth affirmative defenses alleged in the Answer, (Doc. 14 at 6–7), are as follows:

> 8. As a separate and eighth affirmative defense to the Complaint and the purported cause of action contained therein, Owner alleges that the United States is acting in bad faith or in an arbitrary and capricious manner in seeking to take the property and has caused the owners to suffer significant damages.
>
> 10. As a separate and tenth affirmative defense to the Complaint and the purported cause of action contained therein, Plaintiff's purported attempt to calculate just compensation owed to Owner was arbitrary, capricious, and/ or done in bad faith.

Likewise, portions of denial nine to the complaint and denial six to the declaration of taking make similar allegations regarding Plaintiff's failure "to deposit an amount of money rationally estimated to constitute just compensation." (Doc. 14 at 3, 5.)

1   For the government's conduct to amount to bad faith or arbitrary and capricious conduct,

2   its actions must have been "without adequate determining principle and without reason." *United*

3   *States v. Carmack*, 329 U.S. 230, 243, 247 (1946). The Court looks at the "procedure followed in

4   making the selection of the site" and determines whether sufficient effort was made "to arrive at a

5   fair and reasoned conclusion." *Id*. at 244. "[T]he 'arbitrary, capricious, or bad faith' standard

6   necessitates an analysis of *the manner* in which the officials exercised their authority." *16.03*

7   *Acres of Land*, 26 F.3d at 355. "Action, when exercised honestly, fairly, and upon due

8   consideration is not arbitrary and capricious, even [when] there [is] room for a difference of

9   opinion [regarding which] course to follow." *Chapman v. Public Utility Dist. No. 1*, 367 F.2d

10  163, 168 (9th Cir. 1966).

11  As to eighth affirmative defense, Defendant fails to sufficiently raise a question of fact.

12  The defense merely "alleges that the United States is acting in . . . an arbitrary and capricious

13  manner in seeking to take the property." (Doc. 14 at 6–7.) This is a legal conclusion with no

14  detail regarding the plausible existence of bad faith.[9]  *See Iqbal*, 556 U.S. at 678 ("A claim has

15  facial plausibility when the [defendant] pleads factual content that allows the court to draw the

16  _____

17  [9]     In its motion, Plaintiff explains that the VORTAC facility is a "decades-old FAA navigational aid" and the
    FAA has "leased the Subject Property since at least 1990" to prevent any interference with the VORTAC's

18  navigational signal. (Doc. 25-1 at 3.) Plaintiff explains that the FAA and the Defendant had a lease agreement from
    around 2008, when Defendant gained title to the property, to around 2019, when the parties were unable to renew the
    lease. (*Id*.) In opposition, Defendant seems to concede this point, stating that "the Government initially had a lease

19  on the property." (Doc. 28 at 11.) Defendant now argues that the Government's "decisions subsequent to the lease
    expiring in 2019 constitute . . . bad faith, including the decisions regarding changes to the scope, size and interest of

20  the subject property." (Doc. 28 at 11.) In essence, Defendant argues that the government's decision to condemn the
    Subject Property, following unsuccessful negotiations to extend the lease, was arbitrary. Because these assertions
    were not presented in the pleadings, the Court does not consider these facts in deciding the present motion. *See Hal*

21  *Roach*, 896 F.2d at 1550.
            Even if Defendant had plead such facts in its Answer, Defendant would not prevail. Assuming, without

22  deciding, that these facts are not in dispute, Plaintiff had a good faith reason for selecting the Subject Property.
    Given FAA's long-standing presence on the land, its past lease agreements, and its efforts to renew the lease,

23  Plaintiff's decision to condemn the property was not without reason. Similarly, in *Carmack*, the Court found that the
    government's conduct was not arbitrary because the selection process evinced a fair and well-reasoned decision. 329

24  U.S. at 244. There, government officials first received approval for the general project, inspected twenty-two
    proposals of sites to build the post-office and customhouse, carefully considered the sites, and ultimately asked the

25  Attorney General to file the condemnation proceeding. *Id*. at 244 n.15. While the FAA did not act as extensively as
    the officials in *Carmack*, the FAA nonetheless engaged in efforts to renew the lease and had a good faith reason to

26  condemn the land—namely, "to support the neighboring VORTAC, as it has done for decades." (Doc. 30 at 7);
    *Carmack*, 329 U.S. at 244 n.15 ("The foregoing narration of the steps taken in this instance [is] not intended as an

27  indication that all or any of them are essential to the exercise of the statutory authority to select sites in other cases.
    They are set forth to help demonstrate that, in the face of them, the selection here cannot be classed as 'capricious

28  and arbitrary . . .'"). Nonetheless, the Court does not base its decision on these facts, rather on Defendant's failure to
    plead its defense in its Answer.

1  reasonable inference that the [plaintiff] is liable for the misconduct alleged.")  The defense thus

2  fails for lack of factual specificity.  *Id.*; *see also 14.02 Acres of Land*, 2004 WL 7337381 at *16–

3  17 (finding that a defense which alleged an intent "by arbitrary and capricious action that the only

4  cognizable benefit of the use of the property accrue to private interests" failed to state a sufficient

5  defense to condemnation).  The defense also fails to meet the responsive pleading standard

6  contemplated by Rule 71.1(e)(2) for lack of sufficient factual detail.  *See 0.08 Acres of Land*, 246

7  F. Supp. at 409 (explaining that Rule 71.1(e) "contemplates particular specifications and not

8  generalizations").  As the court best explained in *United States v. 2.9 Acres of Land*, 554 F. Supp.

9  529, 532 (D. Mont. 1982) (citing *Ness Inv. Corp. v. United States Dep't of Agric.*, 512 F.2d 706,

10 717 (9th Cir. 1975)):

11
          In raising the defense of arbitrary and capricious conduct, the
12        defendant must allege facts sufficient to apprise the plaintiff of the
          conduct on its part which is alleged to have been arbitrary and
13        capricious. The court is acutely aware of the liberality attendant the
          rules of pleading. However, a general allegation that an agency
14        action was arbitrary and capricious adds nothing to a pleading.

15 Accordingly, the defense fails to raise a material issue of fact.

16       Instead, the only conclusion suggested by the facts in the pleadings is that Plaintiff's

17 actions are fair and well-reasoned.  (Doc. 1-2.)  The FAA took the land for a valid public use,

18 namely, "to support the safe navigation and operation" of "private aviation activities."  (*Id.*)  It

19 did so because it had a legitimate concern about the Subject Property's interference with the

20 VORTAC's navigational signal.  (*See* Doc. 1-4.)  As explained in *Chapman*, "Both federal and

21 state authorities recognize that the power of eminent domain is not confined to the taking of

22 property for which there is an absolute and immediate need. It extends also to the taking of

23 property which is reasonably necessary, and for which a need will probably exist within a

24 reasonable time."  367 F.2d at 168.  Here, the condemnation of the Subject Property was

25 reasonably necessary because of the property's proximity to the VORTAC and the need to

26 maintain a 1,200-foot clear zone.  (Doc. 1-4); *Chapman*, 367 F.2d at 165, 168 (explaining that

27 condemning fee simple absolute, as opposed to a mere flowage easement, in lands adjacent to the

28 reservoir rim was reasonably necessary to the operation and maintenance of the Wells

1  Hydroelectric Project).  Hence, the Court will not set aside the takings decision as arbitrary

2  because the official's conduct is not "so egregious that the taking at issue can serve no public

3  use."  *See 16.03 Acres of Land*, 26 F.3d at 356.

4       As to the tenth affirmative defense, portions of denial nine to the complaint, and portions

5  of denial six to the declaration of taking, the objections fail as a matter of law.  Defendant argues

6  that the Plaintiff's "attempt to calculate just compensation" was arbitrary and capricious and that

7  "Plaintiff [] failed to deposit an amount of money rationally estimated to constitute just

8  compensation."  (Doc. 14. at 3, 5, 7.)  Such objections are invalid.  *United States v. 1.647 Acres*,

9  No. 3:15-cv-01859-L-DHB, 2017 WL 1080665, at *4 (S.D. Cal. Mar. 22, 2017) ("A district court

10 has no authority to evaluate the good faith of the Government's deposit").  As the Ninth Circuit

11 explained, courts cannot review the amount of estimated compensation because "the

12 administrative officials have been delegated authority to make the declaration of taking and to

13 make the estimate." *United States v. Cobb*, 328 F.2d 115, 116 (9th Cir. 1964).  Here, an inquiry

14 into the sufficiency of the deposit is not permissible because the FAA administrator has the

15 statutory authority to condemn the Subject Property, and the FAA Deputy Assistant

16 Administrator authorized the Declaration of Taking and certified the estimated sum of just

17 compensation.  *Id*.; (Doc. 2; Doc. 2-6); 49 U.S.C. § 106(b)(2)(E) ("The Deputy Administrator

18 shall carry out duties and powers prescribed by the Administrator.").

19      In view of the facts, the FAA's decision to condemn the property was reasonable.

20 Judgment on the pleadings as to the eighth defense is proper for lack of factual sufficiency.

21 Further, judgment as to the tenth defense, and portions of denials nine and six, is proper for lack

22 of legal sufficiency.  *Cf. Gen. Conf. Corp. of Seventh-Day Adventists*, 887 F.2d at 230–31

23 (denying judgment on the pleadings because defendant "sufficiently raised" a "question of fact"

24 as an affirmative defense).  Accordingly, Plaintiff's judgment on the pleadings as to Defendant's

25 affirmative defenses eight and ten, relevant portions of denial nine to the complaint, and relevant

26 portions of denial six to the declaration of taking is **GRANTED**.

27          **E.  Eleventh Affirmative Defense**

28      The eleventh affirmative defense "reserves the right to recover attorneys' fees that may

1   arise for this action, as provided by the Equal Access to Justice Act [("EAJA")], 28 U.S.C.

2   § 2412, including fees due to bad faith by the United States or an agency of the United States."

3   (Doc. 14 at 7.)  This objection fails as a matter of law.  As the court explained in *WMTA*, such

4   defense does not constitute a "legally cognizable objection[] to the taking[] of the property."

5   2022 WL 2438549, at *6.  EAJA applies only after a court renders a final judgment on just

6   compensation.  *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other

7   expenses shall, within thirty days of final judgment in the action, submit to the court an

8   application for fees and other expenses which shows that the party is a prevailing party and is

9   eligible to receive an award under this subsection"); *id.* at § 2412(d)(2)(H) ("'prevailing party' in

10  the case of eminent domain proceedings, means a party who obtains a final judgment (other than

11  by settlement), exclusive of interest, the amount of which is at least as close to the highest

12  valuation of the property involved that is attested to at trial on behalf of the property owner . . .").

13  Currently, there is "no final judgment as to the adequacy of the just compensation," thus the

14  "assertion that defendants are entitled to additional damages is not a 'defense or objection' to the

15  taking itself."[10]  *WMTA*, 2022 WL 2438549, at *7.

16      Defendant cites *Walsh v. Campbell St. Auto., Inc.,* No. 6:21-cv-03037-MDH, 2021 WL

17  2371511, at *4 (W.D. Mo. June 9, 2021), to argue that Plaintiff "cannot move for judgment on

18  this defense."  (Doc. 28 at 6.)  Such argument is unpersuasive.  *Walsh* dealt with a motion to

19  strike defendant's EAJA defense in a case arising under the Fair Labor Standards Act.  2021 WL

20  2371511, at *1.  There, the court denied plaintiff's motion to strike and explained that although

21  the defense was "certainly premature" in that the "matter [was] in the early stages of litigation

22  with no final judgement," the defendant's improper designation "in no way prejudices Plaintiff in

23  this case."  *Id.* at *2.  As the *Walsh* court explained, "[e]ven when striking a defense is technically

24  proper, courts are reluctant to do so in the absence of prejudice to the moving party. *Id.* at *1.

25  This standard is inapplicable to the pending motion for judgment on the pleadings.  Thus, the

26  cited passage from *Walsh* is inapposite.  Accordingly, Plaintiff's judgment on the pleadings as to

27

28  ————————————
[10]     The Court notes that the Defendant is free to raise a request under EAJA once a final judgment on just compensation is rendered.

1   Defendant's eleventh affirmative defense is **GRANTED**.

2       **F.   Denials Six, Seven, and Eight to the Complaint, and Denials Three, Four, and**

3           **Five to the Declaration of Taking**

4       Denials six through eight to the complaint, and three through five to the declaration of

5   taking raise identical objections.  (Doc. 14 at 2–5.)  Specifically, they challenge the "legal

6   description," "plat map," and "depiction of the estate" as incorrect representations of the property

7   the government seeks to take or claim that the owner lacks sufficient knowledge to form a belief

8   about the truth of these allegations.  (*Id*.)  These objections fail as a matter of law because the

9   property descriptions comply with Rule 71.1 and 40 U.S.C. § 3114.  Similarly, in *An Easement &*

10  *Right-of-Way*, the court granted judgment on the pleadings as to defendant's objection claiming

11  an "insufficient property description" in a condemnation action.  2017 WL 916415 at *2.  The

12  court explained that because Plaintiff's property descriptions complied with the requirements set

13  forth in Rule 71.1(d)(2)(A)(ii) and Section 3114, defendant's objections had no legal basis.  *Id.* at

14  *4; *see also 0.08 Acres of Land*, 246 F. Supp. at 410 (finding that "[s]o far as the face of the

15  pleadings are concerned, the descriptions are sufficient" and therefore defendant's objections

16  regarding the property description were unwarranted).  The declaration of taking provides a

17  lengthy legal description of the land sought which is "sufficient to identify the land," includes

18  "the interest to be taken," and includes a "plan showing the land taken."  40 U.S.C. § 3114(a)(2);

19  Fed. R. Civ. P. 71.1(d)(2)(A); (Doc. 2-3; 2-4; 2-5.)

20      As the court explained in *0.08 Acres of Land*, "[i]n the response, as provided in Rule

21  71A(e), a person having an interest is required to identify it."  246 F. Supp. at 410.  Yet, despite

22  objecting to the property description in its Answer, Defendant failed to identify the land to which

23  it claims an interest.  *Id*.; Fed. R. Civ. P. 71.1(e)(2)(A), (B) ("A defendant that has an objection or

24  defense to the taking must serve an answer . . . [t]he answer must: identify the property in which

25  the defendant claims an interest; state the nature and extent of the interest").  Thus, the defense

26  fails as a matter of law.[11]  Plaintiff's judgment on the pleadings as to these denials is **GRANTED**.

27  _____

28  [11]      To the extent the "owner cannot tell by the description given by the condemnor what part of his land is
    sought to be taken there should be a method of clarifying this situation."  *0.08 Acres of Land*, 246 F. Supp. at 410.
    Since determining the precise amount of land taken is relevant to determining the amount of just compensation, this

1

2

**G. Ninth and Twelfth Affirmative Defense, and Portions of Denial Nine to the**

**Complaint and Denial Six to the Declaration of Taking**

3    The Ninth and Twelfth affirmative defenses alleged in the Answer, (Doc. 14 at 7), are as

4    follows:

5

6

7

> 9. As a separate and ninth affirmative defense to the Complaint and
> the purported cause of action contained therein, Owner alleges that
> "just compensation" for the property . . . exceeds one hundred forty
> thousand dollars ($140,000).

8

9

> 12. As a separate and twelfth affirmative defense to the Complaint
> and the purported cause of action contained therein, Owner reserves
> the right to receive additional interest on any final award of
> compensation, as provided by 40 U.S.C. § 3116.

10    Likewise, portions of denial nine to the complaint and denial six to the declaration of

11    taking make similar allegations: "Owner asserts that the just compensation required under law is

12    greater than Plaintiff alleges and has deposited." (Doc. 14 at 3, 5.) Defendant requests a "trial by

13    jury to determine just compensation for the taking and any damages that may result from the

14    taking." (*Id.*) Plaintiff does not move for judgement on the pleadings as to these defenses and

15    instead seeks to "focus this litigation on determining the amount of just compensation it owes for

16    the Subject Property." (Doc. 30 at 10.) Accordingly, these defenses will be later addressed at

17    trial on the issue of just compensation.

18    **H. Thirteenth Affirmative Defense**

19    The thirteenth affirmative defense alleged in the Answer, (Doc. 14 at 7), is as follows:

20

21

22

23

24

> As a separate and thirteenth affirmative defense to the Complaint and
> the purported cause of action contained therein, Owner reserves the
> right to assert other applicable affirmative defenses as may become
> available or apparent during discovery. Owner further reserves the
> right to amend its Answer and/or affirmative defenses accordingly,
> and/ or delete affirmative defenses that it determines are not
> applicable during the course of subsequent discovery and
> proceedings.

The Court addresses this defense in parts because it raises two separate issues.

25    **1. Reservation of Unpled Defenses**

26

27

28

issue may be addressed at trial. Fed. R. Civ. P. 71.1(e)(3) ("at trial on compensation, a defendant – whether or not it
has previously appeared or answered – may present evidence on the amount of compensation to be paid"); *0.08 Acres
of Land*, 246 F. Supp. at 410 ("the Commissioners will see to it that defendants have opportunity to know just
what land is sought to be acquired and will have time to secure witnesses for the hearings on the values").

1    Defendant's reservation of the "right to assert other applicable affirmative defenses as

2 may become available or apparent during discovery" fails as a matter of law.  Rule 71.1(c)(3)

3 expressly states, "A defendant waives all objections and defenses not stated in its answer. No

4 other pleading or motion asserting an additional objection or defense is allowed."  In *An*

5 *Easement & Right-of-Way Over 3.28 Acres*, the court granted judgment on the pleadings as to a

6 virtually identical objection.  2017 WL 916415 at *5.  There, the court dismissed an objection

7 reserving "any and all other affirmative defenses that may become apparent during the discovery

8 process of this action."  *Id.*  The court explained that "Rule 71.1 does not permit such a

9 reservation of unpled defenses."  *Id.*  This conclusion is consistent with Third Circuit and Fourth

10 Circuit authority explaining that Rule 71.1 was meant to facilitate the prompt resolution of

11 condemnation actions.  As the Third Circuit explained in *19.623 Acres of Land*,

> One of the major purposes of Rule 71A is to simplify condemnation proceedings so that the rights of the parties may be determined promptly and with assurance. Although those interests are important ones in most litigation, they are especially substantial in the condemnation area, where the right of the government to proceed with construction projects, often of major proportion and always devoted to public use, is paramount.

> The primacy of these factors where condemnation is concerned is reflected by the structure of Rule 71A. The rule contemplates a two-step procedure. In the first step, the government announces what land it needs, and the landowners are given a full opportunity to present, in their answers, objections or defenses they have to the taking. Any defenses so raised are ruled upon by the court. But in the interest of promptness, no preliminary motions or other pleadings are allowed, unlike the procedure in other civil actions.

> "The prohibition of other pleadings clearly ha(s), as its purpose, an early joinder of issue and the elimination of the possibility of extended delay through the presentation of preliminary pleadings with resultant hearings and orders. One pleading to raise all objections and defenses to the taking and one hearing to dispose of them are contemplated . . ."

24 563 F.2d at 569; *see also Atl. Seaboard Corp. v. Van Sterkenburg*, 318 F.2d 455, 458 (4th Cir.

25 1963) ("The Rule's prohibition of any pleading other than an answer is clear and unequivocal.").

26 Accordingly, judgment on the pleadings as to this portion of the defense is **GRANTED**.

27    **2.  Leave to Amend**

28    Plaintiff initially moved for judgment on the pleadings as to the entirety of this defense,

(Doc. 25-1 at 14), but now "withdraws the portion" relating to "Defendant's reservation of the right to amend its Answer." (Doc. 30 at 9–10).  The Court nonetheless addresses this issue because the deadline for Defendant to amend its pleading once as a matter of course has now passed, and Defendant now requests leave to amend its Answer.  Fed. R. Civ. P. 15(a)(1)(A); (Doc. 28 at 11–12.)

Despite Rule 71.1(e)(3) prohibition against "additional objection[s] or defense[s]" not preserved in the answer, such language does not nullify a litigant's right to amend its answer under Rule 15.  *U.S. v. 45.43 Acres of Land Situated in Ada Cnty., Idaho*, No. CV 08-463-S-CWD, 2009 WL 1605127, at *2 (D. Idaho June 4, 2009).  As the Advisory Committee Notes to Rule 71.1 make clear, subdivision (e) means that "all defenses and objections [are] to be presented in an answer and . . . not a preliminary motion" and a defendant's "need to amend the answer is adequately protected by Rule 15."  *Id*.  Therefore, Rule 71.1(e)(3) does not inhibit the Defendant's ability to amend its Answer.  *Id*.; *see also U.S. v. 729.773 Acres of Land, More or Less, Situated in the City and Cnty. of Honolulu*, Hawaii, 531 F. Supp. 967, 970 (D. Haw. 1982).

However, the Court will only grant leave to amend when the pleading can be "cured by additional factual allegations."  *Somers*, 729 F.3d at 960.  Put differently, "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  Here, many of Defendant's objections turn on pure legal questions and fail as a matter of law.  It is thus clear that these objections would not be cured by additional factual allegations.  Alternatively, the few objections which turn on factual questions may be cured by additional factual allegations.  Accordingly, leave to amend is **GRANTED** as to Defendant's eighth affirmative defense and denied as to all others.

### CONCLUSION AND ORDER

For the reasons stated above, the Court **ORDERS**:

1.    Plaintiff's motion for judgment on the pleadings (Doc. 68-1) **GRANTED.**

2.    Defendant is granted leave to amend the Answer **_only_** as to its Eighth Affirmative Defense.  Any such Amended Answer **SHALL** be filed, if at all, within **30 days**.  If

Defendant elects not to amend its Answer, it shall file a notice indicating as much.

3.   Plaintiff **SHALL** file any response within 30 days of the filing of an Amended Answer.

IT IS SO ORDERED.

Dated:   **October 6, 2025**

UNITED STATES DISTRICT JUDGE