

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>14.368 ACRES, MORE OR LESS, SITUATED IN KERN COUNTY, STATE OF CALIFORNIA, AND PRECIOUS EARTH INC., et al.,<br><br>Defendants. | Case No. 1:24-cv-00185 JLT CDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EIGHTH AFFIRMATIVE DEFENSE<br><br>(Doc. 44) |

On behalf of the Federal Aviation Administration and under 40 U.S.C. § 3114, the United States of America filed suit to condemn 14.368 acres of land located in Kern County, California. (Doc. 1-1; Doc. 1-3.) Plaintiff moves to strike the eighth affirmative defense raised in Defendant's amended answer. (Doc. 44; *see also* Doc. 42 at 4–10.) Plaintiff argues that because the land was taken for legitimate public use, the decision to condemn the property was not arbitrary or capricious. (Doc. 44 at 5–6.) After considering the parties' briefing, the Court **GRANTS** Plaintiff's Motion.

## BACKGROUND

Since 1959, the FAA has operated a VHF Omni-Directional Range Tactical Air

1

Navigation ("VORTAC") facility located approximately three miles northwest of the Bakersfield airport in California. (Doc. 25-1 at 3.) The FAA maintains the facility to assist in the safe navigation of the National Air Space. (*Id.* at 2.) In operating the facility, the FAA leases surrounding properties to "maintain[] a 1,200-foot clear zone around the VORTAC." (*Id.* at 3 n.2.) This is because "structures and activities too close to a VORTAC can interfere with an aircraft's ability to receive the VORTAC's navigational signal, inhibiting the safe operation of aircrafts in its vicinity." (*Id.* at 3.) Defendant, Precious Earth Inc., owns a 45-acre parcel near the VORTAC, and 14.368 acres of that parcel ("Subject Property") come within the 1,200-foot zone. (*Id.*) The FAA has leased the Subject Property since 1990 to ensure no activity interferes with the VORTAC's navigational signal. (Doc. 25-1 at 3.) In 2008, Defendant acquired the Subject Property and maintained the lease with the FAA until on or around 2019, when the lease ended. (*Id.*) After unsuccessful negotiations to extend the lease, Plaintiff filed this condemnation action to acquire the Subject Property. (*Id.*) Pursuant to 40 U.S.C. § 3114, Plaintiff filed a Complaint and a Declaration of Taking on February 8, 2024. (Doc. 1; Doc. 2.)

On April 4, 2024, Defendant filed an answer objecting to the condemnation. (Doc. 14.) On June 12, 2024, Plaintiff filed a motion for judgment on the pleadings, (Doc. 25), which this Court granted with leave for Defendant to amend its eighth affirmative defense. (Doc. 38 at 27–28.) On November 5, 2025, Defendant filed an amended answer alleging that Plaintiff's actions were arbitrary and capricious, largely because (1) Plaintiff's behavior during lease renegotiations was in bad faith and (2) the size of the acquisition was overbroad and unnecessary for the purported purpose. (*See* Doc. 42 at 5–10.) Plaintiff moved to strike the amended answer on November 25, 2025, (Doc. 44), and Defendant filed an opposition to that motion on December 9, 2025. (Doc. 46.) On December 18, 2025, Plaintiff filed a reply (Doc. 47), and on December 26, 2025, Defendant filed an objection to Plaintiff's reply evidence under Local Rule 230(m)(1).[1] (Doc. 48.) The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1403.

///

---

[1] Because the Court does not rely on Plaintiff's reply evidence in deciding the present motion (e.g., the attached exhibits and reference to Defendant's separate action in the U.S. Court of Federal Claims), the Court does not address Defendant's objections under Local Rule 230(m)(1).

**LEGAL STANDARD**

Under the Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Although motions to strike are generally disfavored[2], "where the motion may . . . mak[e] . . . trial of the action less complicated, or . . . otherwise streamlin[e] the ultimate resolution of the action, the motion . . . will be well taken." *State of Cal. ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981). "A defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Bedrock Financial, Inc. v. United States*, No. 1:10-cv-2326-OWW-MJS, 2011 WL 2462769, at *2 (E.D. Cal. June 17, 2011) (citations and quotations omitted).

"When a court considers a motion to strike, it 'must view the pleading in a light most favorable to the pleading party.'" *Miller v. S&S Hay Co.*, No. 1:12-cv-01796-LJO-SMS, 2013 WL 4679647, at *1 (E.D. Cal. Aug. 30, 2013) (citations omitted). "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Id*. However, a Rule 12(f) motion to strike is "proper when a defense is insufficient as a matter of law." *Id*. (citing *Kaiser Aluminum & Chem. Sales, Inc. v Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)). "To determine that a defense is insufficient as a matter of law, 'the court must be convinced that there are no questions of fact, that any questions of law are

---

[2] "Given their disfavored status, courts often require 'a showing of prejudice by the moving party' before granting the requested relief." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) (citations omitted). However, this Court has observed that no published Ninth Circuit authority requires a showing of prejudice to strike affirmative defenses. *Houston Cas. Co. v. Crum & Forster Ins. Co.*, No. 1:16-cv-535-LJO-EPG, 2016 WL 4494444, at *4 (E.D. Cal. Aug. 25, 2016). To the contrary, the Ninth Circuit has indicated that "Rule 12(f) says nothing about a showing of prejudice." *Atlantic Richfield Co. v. Ramirez*, 176 F.3d 481, 1999 WL 273241, at *2 (9th Cir. 1999) (rejecting the argument that a moving party should be required to demonstrate prejudice to strike redundant material). As such, this Court has declined to require a moving party to show prejudice under Rule 12(f). *See Houston Cas. Co.*, 2016 WL 4494444, at *5; *see also G&G Closed Circuit Events, LLC v. Alfaro*, No. 1:22-cv-0543-JLT-SKO, 2023 WL 1803399, at *3 (E.D. Cal. Feb. 7, 2023) ("Likewise, here, the Court declines to require Plaintiff to show prejudice where such a requirement is not found in Rule 12(f).")

clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *Id*. at *2 (citations omitted).

**ANALYSIS**

**I.       The Government's Conduct Was Not Arbitrary or Capricious.**

The eighth affirmative defense raised in Defendant's amended answer alleges that "the United States is acting in bad faith or in an arbitrary and capricious manner in seeking to take the property." (Doc. 42 at 4.) The Court finds that the government's conduct was not arbitrary, even when viewing the facts in the light most favorable to the non-movant.

For the government's conduct to amount to bad faith or arbitrary and capricious conduct, its actions must have been "without adequate determining principle and without reason." *United States v. Carmack*, 329 U.S. 230, 243, 247 (1946). The Court looks at the "procedure followed in making the selection of the site" and determines whether sufficient effort was made "to arrive at a fair and reasoned conclusion." *Id*. at 244. "[T]he 'arbitrary, capricious, or bad faith' standard necessitates an analysis of *the manner* in which the officials exercised their authority." *U.S., Dep't. of Interior v. 16.03 Acres of Land*, 26 F.3d 349, 355 (2d Cir. 1994) (emphasis in original). "Action, when exercised honestly, fairly, and upon due consideration is not arbitrary and capricious, even [when] there [is] room for a difference of opinion [regarding which] course to follow." *Chapman v. Public Utility Dist. No. 1*, 367 F.2d 163, 168 (9th Cir. 1966). To prevail on an argument that an agency's decision was arbitrary or capricious, Defendant must plead facts showing that "the [official's] conduct [was] so egregious that the taking at issue can serve no public use." *United States v. 14.02 Acres of Land*, No. CV-F-03-6019 REC, 2004 WL 7337381 at *16 (E.D. Cal. June 21, 2004) (quoting *16.03 Acres of Land*, 26 F.3d at 356).

In alleging that the government's conduct was arbitrary and capricious, Defendant presents facts which are best grouped into three categories. Namely, that the government acted in bad faith (1) by being unresponsive and non-cooperative during lease renewal; (2) by condemning more land than necessary; and (3) by interfering with Defendant's business opportunities. The Court address each argument in turn.

///

**A. Lease Renewal Efforts**

Regarding the lease renewal process, Defendant alleges the following facts:

> The lease expired in 2019. For more than one year prior to expiration of the lease, Owner repeatedly and in good faith sought timely lease negotiations. . . . Despite these efforts, the FAA was unresponsive for extended periods, failed to make required holdover payments, and otherwise took actions and omissions that prevented meaningful renewal negotiations. The FAA's persistent unresponsiveness and failure to pay required holdover charges materially frustrated Owner's attempts to reach a lease renewal and shows bad faith.
>
> Rather than pursue timely renewal or holdover occupancy consistent with the FAA's internal Acquisition Management System ("AMS") guidance, the FAA ceased meaningful negotiations but then took years to initiate condemnation proceedings without documented consideration of less intrusive alternatives. . . .
>
> Upon information and belief, the FAA's pursuit of surface and subsurface mineral rights violates its own policy requiring the acquisition of only the minimum necessary interest in property, violates its policy to commence the [lease] renewal process at least 18 months prior to the lease expiration date, and to take steps to ensure that any holdover period would not exceed six months.
>
> Owner repeatedly requested direct contact with FAA officials authorized to decide [lease renewals] and the FAA refused or failed to provide such access . . . .

(Doc. 42 at 5.) Defendant further alleges that the agency negotiator misrepresented his authority to conclude the lease renewal process without further approval. (*Id*. at 6.) For instance, in 2020, the agency negotiator sent a draft lease for the easement indicating he or she "had confirmation that . . . the 1200 ft radius [could be reduced] to just 1000 ft." (*Id*.) Yet, after reaching a tentative agreement on price per acre, the agency negotiator "later informed Owner that their superiors had rejected the tentative terms despite prior representation of authority." (*Id*.) Then, in April of 2021, FAA's contracting officers indicated they had "justification" to pay $18,000 a year to the Owner to lease the VORTAC easement, but then in November 2021, an independent FAA appraiser indicated that the rent estimate "should have been approximately $1,000 to $1,100."[3] (*Id*.)

---

[3] In regards to the lease appraisal, Defendant claims that "FAA promised to obtain and provide an appraisal to identify fair market value, but delayed appraisal production for approximately six months, refused to provide Owner with a timely copy for review, and excluded the three most proximate comparables to the Subject property acre parcel in distance, time, topography . . . from the FAA's list of comparables without an adequate explanation." (Doc. 42 at 8.) Defendant argues that "[d]espite repeated promises by the FAA that it would provide a copy of the complete appraisal, the FAA never provided a copy to the Owner. These appraisal procedures were handled in a manner that prejudiced Owner and

5

However, these facts relate to the government's behavior during the lease renewal process. As explained in this Court's prior order, (*see* Doc. 38 at 18–19), the government was under no obligation to negotiate a lease renewal prior to condemning Defendant's land. Neither the Declaration of Taking Act, nor the Department of Transportation Act requires the FAA to engage in such negotiations prior to condemning the land. *See United States Upon Rel. of Tennessee Valley Auth. v. An Easement & Right-of-Way Over 0.24 Acre of Land,* 2019 WL 11 3849163, at *3 (N.D. Miss. Aug. 15, 2019) (finding that neither the TVA Act, 16 U.S.C. § 831c(i), nor the Declaration of Taking Act, 40 U.S.C. § 3114, required the Tennessee Valley Authority to enter negotiations prior to condemning the subject property); *United States v. An Easement & Right-of-Way Over 3.28 Acres of Land*, No. 1:15-cv-00019-GHD-DAS, 2017 WL 916415, at *3 (N.D. Miss. Mar. 7, 2017) ([Tennessee Valley Authority] was not required to engage in good-faith negotiations or produce an offer of compensation prior to instituting the [condemnation] action."). Thus, this defense fails as a matter of law. While Defendant claims that FAA's internal policy requires certain procedures for lease renegotiations, the relevant statutory authority in this case does not require lease renewal efforts as a prerequisite to condemnation. *See* 40 U.S.C. § 3114(a) (omitting any requirement for the government to submit a declaration detailing its lease negotiation efforts); 49 U.S.C. § 106(n)(1) (omitting any reference to a requirement for the FAA to engage in lease negotiations prior to condemnation). As such, this defense may "confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action . . . and should be deleted." *Bedrock Financial, Inc.*, 2011 WL 2462769, at *2.

---

tended to suppress fair valuation." (*Id*.) Defendant further alleges that the "appraisal requests reveal undue influence" due to "client pressure on value opinions." (*Id*.) For instance, an FAA official suggested the rent estimate should have been $1,000 to $1,100 and the value of the appraisal ended up being exactly $1,100, which "suggests improper influence on an independent appraiser, further evidencing bad faith manipulation." (*Id*.) In addition, Defendant claims it took the FAA approximately three years from the time the Owner began negotiating the lease renewal to when the FAA obtained an appraisal for the property, which shows personal animus. (*Id*.) Defendant also notes that the Owner submitted a Freedom of Information Act ("FOIA") request for any documents related to FAA's lease valuation and that FAA's response to such request evinced personal animus. (Doc. 42 at 8.) Specifically, FAA delayed its response to the FOIA request, attempted to impose excessive fees, and refused to produce internal communications. (*Id*.)

At bottom, these facts show that the parties engaged in lease renewal efforts for years to no avail, leading to the government's decision to condemn the Subject Property, which is not unheard of. (Doc. 42 at 5–8); *see e.g.*, *United States v. 69.1 Acres of Land*, *More or Less, Situated in Platt Springs Twp.*, *Cnty. of Lexington*, 942 F.2d 290, 291–92 (4th Cir. 1991) (explaining "the government was forced to file this condemnation action" after the lease, for operation of a VORTAC station, expired because the "landowner would not agree to the government's offer for a new lease"); *United States v. 14.54 Acres of Land*, *More or Less*, *Situated in Town of Wash.*, *Cnty. of Dutchess*, 599 F. Supp. 123, 124 (S.D.N.Y. 1984) ("When the lease [for the VORTAC facility] expired, the Government was unable to reach an agreement with the defendant concerning new leasing terms and therefore exercised its power of eminent domain."). Though Defendant alleges that the government's actions "frustrated [the] Owner's attempts to reach a lease renewal," such as failing to make holdover payments and making disparaging comments, such facts do not demonstrate bad faith. Instead, these facts demonstrate that the party's relationship turned contentious over the years due to disagreements regarding the size of the clear zone and price of the VORTAC easement, as well as failed lease negotiations. (*See id.* at 5–8.) While the government could have approached the lease renewal process differently, that does not render the government's conduct arbitrary and capricious.

As explained in *Carmack*, the standard of review is whether the "procedure followed in making the *selection* of the site" was fair and well-reasoned. *Carmack*, 329 U.S. at 244–46 (finding that government's selection of the park site for a post office was not arbitrary because it was recommended by the site inspector and there was a community preference for using the park site as the post office). Similarly, here, the government's selection of the Subject Property was not arbitrary. Defendant concedes that the "FAA has maintained the VORTAC near the Subject Property since 1959 and has leased portions of the Subject Property to secure a clear zone around the EHF VORTAC facility" for decades. (Doc. 42 at 5.) Based on the facts as alleged, the government engaged in efforts to renew the lease with Defendant from at least 2019 to 2022, (*see* Doc. 42 at 5–8), before deciding to condemn the Subject Property in 2024, (*see* Docs. 2, 3). The government had a good-faith reason to *select* the land for condemnation because of its vicinity to

its VORTAC station, its potential interference with the navigational signal, the government's long-standing presence on the land, and the inability to renew the lease after failed negotiations. (*See* Doc. 42 at 5–8; Doc. 44 at 7–8.) Even when interpreting the facts in the light most favorable to Defendant, this Court cannot find that Plaintiff's *selection* of the site for the safe operation of its VORTAC facility is "without adequate determining principle" such that it "serve[s] no public use." *Carmack*, 329 U.S. at 247; *U.S., Dep't. of Interior v. 16.03 Acres of Land*, 26 F.3d 349, 356 (2d Cir. 1994). Therefore, the Court **STRIKES** these facts as insufficient as a matter of law.

### B. Size and Necessity of Acquisition

Regarding the size of the government's acquisition, Defendant claims that the government took more land than necessary for the safe operation of the VORTAC. For instance, although the FAA negotiator initially confirmed that the VORTAC clear zone could be reduced to 1000 ft, instead of 1200 ft, FAA superiors ultimately rejected this proposal. (Doc. 42 at 6.) Defendant further argues that the FAA contracting officer instructed staff to just "go with 1200 ft" as the operative figure without documented engineering justification, despite an FAA engineer indicating that the VORTAC site at issue had "no hard, or legal siting criteria" and "allow[ed] some flexibility in shape and size." (*Id*. at 7.) Defendant claims that "comparable FAA practice and the agency's own internal discussions indicate that smaller easements have been used at similar sites[,]" and that internal FAA mapping indicates that a 500-foot radius would not reach the Subject Property. (*Id*.)

Defendant alleges that "FAA's selection of full fee title of 14.368 acres was overbroad and unnecessary to protect VORTAC operations, particularly where the only operational interest reasonably implicated was an avigation easement for signal protection." (Doc. 42 at 7.) Defendant further argues that "FAA . . . failed to document any engineering studies, cost-benefit analyses, or written determinations demonstrating that full fee title (including mineral rights) was both necessary and the least intrusive means." (*Id*. at 9.) Defendant claims that an "agency engineer recommended relocating the [] VORTAC" because it "would benefit from infrastructure investment, and relocation" but the government still decided to condemn the Subject Property. (*Id*.) Defendant claims that the "VOR facility is not even located on the Subject Property and is

8

part of 1950s era navigational system being phased out nationwide" as approximately 200 out of 1,000 original U.S. VOR stations have been discontinued as of November 2025. (*Id.*) Yet Defendant acknowledges that the VORTAC facility at issue here "does not appear on the FAA's . . . discontinuance candidate list." (*Id.*)

Such facts fail as a matter of law. These facts go to the necessity of the taking. As this Court explained it is prior order, (*see* Doc. 38 at 15–16), the property was taken for a legitimate public use since it comes within the VORTAC's clear zone and may interfere with an aircraft's ability to receive the VORTAC's navigational signal. (*Id.* at 16.) This is tied to FAA's statutory role related to aviation safety and air traffic control. (*Id.* at 15); *see also* 49 U.S.C. §§ 106(f)(3)(A)(i), (f)(2)(A)(ii). Whether the entirety of the Subject Property actually interferes with the navigational signal is not for this Court to "second guess." *See United States v. 80.5 Acres of Land*, 448 F.2d 980, 984 (9th Cir. 1971). As the Ninth Circuit explained:

> [T]he <u>landowner's standard of what is needed to fulfill the public purpose is not to be substituted for the standard prescribed by Congress</u>. . . . 'It is not for the courts to oversee the choice of the boundary lines nor to sit in review on the size of a particular project area. <u>Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch</u>.'

*Id.* at 983 (quoting *Berman v. Parker*, 348 U.S. 26, 35–36 (1954)) (emphasis added). Nor does the government have to provide "engineering studies," "cost-benefit analyses," or "written determinations" that the acquisition was "necessary and the least intrusive means." (*See* Doc. 42 at 9.) That is not the standard of review. Instead, the government's acquisition of the property must only be "rationally related to a conceivable public purpose." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984). Again, as explained in this Court's prior order, the government's acquisition here passes constitutional muster. (*See* Doc. 38 at 15–16.) The government is not restrained solely to acquiring an avigation or aerial easement but rather may acquire fee simple absolute in protecting its interest. *See Chapman*, 367 F.2d at 165, 168 (explaining that condemning fee simple absolute, as opposed to a mere flowage easement, in lands adjacent to the reservoir rim was reasonably necessary to the operation and maintenance of the Wells

Hydroelectric Project). As the Ninth Circuit explained:

> It may be true, as the landowners contend, that the uses which can now be specifically identified might be met by the acquisition of a broadly drawn easement. But these presently identifiable uses are so numerous and burdensome as to leave only a minimal estate unaffected and additional and more burdensome uses, not now identifiable, are certain to arise.
>
> The operation and maintenance of the project is subject to physical factors which cannot be fully anticipated or controlled. . . . In these circumstances, reasonable prudence dictated the taking of the fee in the first instance to avoid the uncertainty, delay, and expense of an early repetition of the long and costly acquisition process. Both federal and state authorities recognize that the power of eminent domain is not confined to the taking of property for which there is an absolute and immediate need. It extends also to the taking of property which is reasonably necessary, and for which a need will probably exist within a reasonable time.

*Chapman*, 367 F.2d at 168 (emphasis added). Similarly, here, it is reasonable for FAA to condemn fee simple absolute to avoid future issues that may otherwise arise by allowing the Owner to maintain power over the land and subsurface area.[4] *See id*. For instance, the FAA may

---

[4] Defendant's reliance on *Warm Springs Irr. Dist. v. Pacific Live Stock Co.*, 270 F. 560, 562 (9th Cir. 1921) to argue that the government's condemnation in fee simple absolute was overbroad is unpersuasive. (Doc. 46 at 4–7.) In that case, the Ninth Circuit reviewed an irrigation district's power to exercise eminent domain pursuant to an Oregan law passed in 1917. *Pacific Live Stock Co.*, 270 F. at 562. The Court assessed whether the relevant statutory authority allowed the irrigation district to condemn fee simple absolute, or solely an easement, when taking land for use as a reservoir site. *Id*. at 561–62. The Court found that, in the absence of contrary intent, the Oregon State Legislature only intended the condemnation of an easement for purposes of a reservoir site. *Id*. at 563. In reaching this conclusion, the Court assessed the "principles expressed by the text-writers" including a clear mandate that the statute at issue must be "strictly construed" and that "[w]here the interest to be taken is not expressly stated, the condemnor is presumed to take no greater interest than an easement where an easement is sufficient to satisfy the purpose of the taking." *Id*. at 562. The present case does not involve the scope of a state irrigation district's eminent domain power in taking land for use of a reservoir site, nor does the present case involve an interpretation of Oregon laws. Instead, the present case pertains to the Federal Aviation Administration's authority to condemn land for air traffic control and aviation safety pursuant to 8 U.S.C. § 3114(a) and 49 U.S.C. §§ 106(f), 106(n)(1). Such statutes allow the FAA Administrator "to acquire (by purchase, lease, condemnation, or otherwise) . . . air traffic control facilities and equipment; . . . and such other real and personal property . . . the Administrator considers necessary." 49 U.S.C. § 106(n)(1)(A)(i), (iii). Unlike *Pacific Live Stock Co.*, the relevant statute here sets forth no limitation in taking only an avigation/aerial easement.

Additionally, Defendant's reference to *United States v. 45.43 Acres of Land*, No. CV-08-463-S-CWD, 2009 WL 1605127, at *3–4 (D. Idaho June 4, 2009) is inapposite. (*See* Doc. 46 at 6.) There, the court found that it maintained jurisdiction to review the defense of arbitrary and capricious conduct and denied a motion to strike solely on this ground. *Id*. The court expressly noted that although the defendants "may not prevail or prove their affirmative defense, that does not equate to an inability to assert the defense in an answer." *Id*. at *4. Here, there is no question regarding Defendant's ability to raise the arbitrariness defense or the Court's jurisdiction to review such defense under Fed. R. Civ. P. 71.1. *Cf.*

10

have sought to prevent future issues involving the maintenance and installation of power and control lines running underground or above ground on the Subject Property, which may interfere with the VORTAC's navigational signal. In this sense, FAA's "exercise of [] eminent domain power" in fee simple absolute "is rationally related to a conceivable public purpose" and therefore valid. *Midkiff*, 467 U.S. at 241. These facts do not show that the government's conduct was "so egregious that the taking at issue can serve no public use" to prove arbitrary conduct. *14.02 Acres of Land*, 2004 WL 7337381 at *16 (citations omitted). Instead, with these amended facts, Defendant rehashes legal theories which have already been dismissed as a matter of law. (*See* Doc. 38.) As such, the Court **STRIKES** these facts as insufficient as a matter of law. *See Miller*, 2013 WL 4679647, at *1.

### C.  Interference with Business Opportunities

Regarding the government's interference with business opportunities, Defendant alleges that in 2021, a buyer expressed interest in purchasing the 45-acre parcel "for $40,000 per acre" to build a manufacturing building outside the clear zone and "only put his parking lot in the FAA-restricted aerial easement area." (Doc. 42 at 6.) Defendant claims that "FAA's communications to the buyer chilled the sale process" by providing "evasive and nonresponsive statements" which failed to address the buyer's specified intended use of the Subject Property. (*Id*.) In turn, Defendant claims that FAA's actions "materially impaired Owner's ability to mitigate damages and indicate personal animus rather than objective decision-making." (*Id*.) Along the same lines, Defendant alleges that FAA's actions in tracking the Owner's unrelated business activities for no legitimate reason shows personal animus towards Defendant. (*Id*. at 7.)

Defendant goes on to claim that "[a]s a direct and proximate result of the FAA's arbitrary, capricious, and bad-faith conduct, Owner has suffered and will continue to suffer compensable damages, including loss of use and development opportunities, diminution in [] value of the remainder, lost sale proceeds, consequential business losses, attorneys' fees and costs, and other

---

*45.43 Acres of Land*, 2009 WL 1605127, at *3. This Court already addressed the jurisdictional question in its prior order. (*See* Doc. 38 at 5–7.) In giving Defendant leave to amend its arbitrary and capricious defense for factual insufficiency, (Doc. 38 at 27), the Court now determines that such amended defense fails as a matter of law. Thus, *45.43 Acres of Land* is distinguishable. *Cf. 45.43 Acres of Land*, 2009 WL 1605127, at *3–4.

11

damages." (Doc. 42 at 10.) Plaintiff moves to strike these allegations as improper counterclaims which seek impermissible damages such as consequential damages.[5] (*See* Doc. 44 at 9–10.) The Court agrees. At their core, these factual allegations pertain to interference with third-party business opportunities and relate to damages for claims unrelated to the present condemnation action. Defendant cites no authority to support a finding that such conduct is arbitrary and capricious under the standard set forth above. (*See* Doc. 46 at 9–10); *Carmack*, 329 U.S. at 244–46 (explaining that the standard of review is whether the "procedure followed in making the *selection* of the site" was fair and well-reasoned). As explained above, the government's selection of the site was not arbitrary due to the Subject Property's vicinity and potential interference with the VORTAC station. *14.02 Acres of Land*, 2004 WL 7337381 at *16 ("[A] reviewing court may only set aside a takings decision as being arbitrary, capricious, or undertaken in bad faith in those instances where the court finds that the [official's] conduct so egregious that the taking at issue can serve no public use.") (citing *16.03 Acres of Land*, 26 F.3d at 356). As such, these amended facts fail as a matter of law.

Even when looking at the facts in the light most favorable to Defendant, these facts fail to show bad faith. Defendant indicates that the buyer at issue intended to "put his parking lot in the FAA-restricted aerial easement area." (Doc. 42 at 6.) Naturally, that would have prompted a conversation between the FAA and the buyer regarding potential issues that may arise with the buyer's intended use of the land. Defendant claims that the FAA's "evasive and nonresponsive statements" to the buyer "chilled the sale process and materially impaired Owner's ability to

---

[5] Defendant argues that these facts do not raise counterclaims but rather indicates that "[i]f the defense succeeds, the taking could be invalidated, and any incidental damages would flow from that finding, . . . with incidental damages available in another forum." (Doc. 46 at 10.) Irrespective of whether these facts constitute counterclaims, these facts fail to show arbitrary and capricious conduct under the standard set forth above. Further, as Plaintiff notes, Defendant is already seeking damages for this alleged misconduct by filing an inverse condemnation action in the Court of Federal Claims. (*See* Doc. 44 at 9–10; Doc. 47 at 8–9); *Precious Earth, Inc. v. Federal Aviation Administration, et al.*, Case No. 25-1581 C (Fed. Cl. Sept. 23, 2025). To the extent Defendant objects to Plaintiff's reference to "Defendant's separate action in the U.S. Court of Federal Claims," (Doc. 48 at 2), the Court **DENIES** such objection. Plaintiff was merely responding to Defendant's reference to incidental damages "available in another forum," which was initially put at issue by the Defendant in its amended answer. (*See* Doc. 46 at 9–10; Doc. 42 at 10); *Grange Ins. Ass'n v. Sran*, 184 F. Supp. 3d 799, 819 (E.D. Cal. 2016) (denying defendants' motion to strike because plaintiff did not raise new arguments in its reply brief but merely responded to arguments advanced by the defendant).

12

mitigate damages." (*Id.*) However, Defendant sought to sell a 45-acre parcel where 14.368 acres of that parcel was encumbered by the government's aerial easement. That alone could have chilled the buyer's desire to purchase the Subject Property.

Furthermore, to the extent these amended facts assert claims for incidental and consequential damages, such damages are not recoverable in condemnation suits and are thus stricken. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) (explaining that under the Fifth Amendment, just compensation "means in most cases the fair market value of the property on the date it is appropriated"); *United States v. Miller*, 317 U.S. 369, 374–76 (1943) ("As respect [to] other property of the owner consisting of separate tracts adjoining that affected by the taking, the Constitution has never been construed as requiring payment of consequential damages."); *Campbell v. United States*, 266 U.S. 368, 372 (1924) ("The rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition . . ."); *Klein v. United States*, 375 F.2d 825, 916 (Ct. Cl. 1967) ("It is settled law that in the absence of specific statutory mandate, compensation under the Fifth Amendment may be recovered only for property taken and not for incidental or consequential losses, the rationale being that the sovereign need only pay for what it actually takes rather than for all that the owner has lost.").

Accordingly, the Court **STRIKES** these facts as insufficient as a matter of law and as an invalid defense with the potential to confuse the issues. *Bedrock Financial, Inc*, 2011 WL 2462769, at *2; *Miller*, 2013 WL 4679647, at *1.

**CONCLUSION AND ORDER**

In sum, Defendant's amended factual allegations fail to state a claim for arbitrary and capricious conduct and fail as a matter of law. Accordingly, the Court **STRIKES** Defendant's eighth affirmative defense in full, without leave to amend.[6]  For the reasons stated above, the

---

[6]  Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend shall be "freely give[n] . . . when justice so requires." Nevertheless, the Court may deny leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). For the reasons set forth above, the Court finds leave to amend would be futile. Defendant has already once been given leave

Court **ORDERS**:

    1.    Plaintiff's motion to strike (Doc. 44) is **GRANTED**.

    2.    Defendant's Eighth Affirmative Defense (Doc. 42) is **STRICKEN WITHOUT LEAVE TO AMEND**.

    3.    Defendant's Ninth and Twelfth Affirmative Defense, pertaining to the issue of just compensation and interest, will proceed to trial.

IT IS SO ORDERED.

    Dated:   __**May 26, 2026**__                    _____

                                        UNITED STATES DISTRICT JUDGE

---

to amend, (*see* Doc. 38 at 27), and the renewed factual allegations fail as a matter of law. *See Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (explaining that dismissal without leave to amend is proper if it is clear that the complaint could not be "cured by additional factual allegations"); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008).

14